124

Dennis Jackson *v.* Commissioner of Correction
(14559)

Peters, C. J., Callahan, Borden, Berdon and Norcott, Js.

Argued May 5—decision released August 10, 1993

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (petitioner).

*James A. Killen,* assistant state's attorney, for the appellee (respondent).

BORDEN, J. The petitioner, Dennis Jackson, appeals[1] from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The habeas court concluded that the petitioner had failed to demonstrate good cause for his failure to pursue on direct appeal his claim of unconstitutional jury composition that was the basis of his habeas petition. We affirm the judgment of the habeas court.

The record sets forth the facts and lengthy procedural history of this case. At his criminal trial, conducted in May, 1982, the petitioner was represented

---

[1] The petitioner appealed to the Appellate Court, upon the trial court's grant of certification pursuant to General Statutes § 52-470 (b), and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

by Attorney John Buckley. Prior to the trial, Buckley had reached an agreement with assistant state's attorney Patrick Clifford, who Buckley understood would be prosecuting the petitioner's case. Buckley had agreed with Clifford that, in challenging the jury array in the petitioner's case, the petitioner could rely on evidence presented in another case that Buckley and Clifford had tried together and in which a jury array challenge had been brought.

Clifford, however, did not try the petitioner's case, but instead was replaced by assistant state's attorney Robert Devlin. Devlin, unlike Clifford, was unwilling to stipulate to the jury array evidence that had been presented in the case that Buckley and Clifford had tried together. Devlin also argued to the trial court that the petitioner's motion challenging the array was untimely.

In response, the trial court asked Buckley whether he was ready to present evidence necessary to challenge the array. Buckley stated to the court that he would need additional time to subpoena the appropriate witnesses and that he was not prepared to present evidence at that time.[2] Although Buckley informed the trial court that he needed additional time because he had relied on his prior agreement with Clifford, the trial court denied his request for a continuance. The petitioner, therefore, was unable to introduce evidence to support his challenge to the jury array.

The petitioner was subsequently convicted, after a jury trial, of first degree sexual assault, second degree kidnapping and first degree robbery. The petitioner appealed his conviction to this court and we affirmed the judgment of the trial court. State v. Jackson, 198 Conn. 314, 502 A.2d 865 (1986). In his direct appeal,

[2] The petitioner had previously been granted a two week continuance that began after the jury had been selected but prior to trial.

the defendant did not raise a claim that the trial court had abused its discretion by denying his request for a continuance so that he could produce evidence to challenge the jury array.

In 1987, the petitioner filed a petition for a writ of habeas corpus claiming that the jury array from which his petit jury had been selected had been summoned in violation of his federal and state constitutional rights.[3] The habeas court denied the petition for habeas corpus[4] and the petitioner subsequently appealed. His appeal was consolidated with the appeals of thirty-three other habeas petitioners whose similar jury array claims had been rejected by the habeas court. See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 406, 589 A.2d 1214 (1991).

In those consolidated appeals, the respondent, the commissioner of correction, asserted that, in each case, the habeas court had properly concluded that the com-

[3] The petitioner, a black male, claimed that members of his race were underrepresented on his jury array in violation of his equal protection rights guaranteed by the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution.

[4] The habeas court issued a lengthy memorandum of decision setting forth its reasons for denying the petition. The habeas court first analyzed whether the "cause and prejudice" standard or the "deliberate bypass" rule was the appropriate standard by which to decide whether relief was precluded by the petitioner's failure to challenge the jury array on direct appeal. Although the habeas court concluded that, at the time of his decision, the deliberate bypass rule was still the law of Connecticut, it noted that a pending appeal in this court raised this precise issue. The court therefore analyzed the claim under both rules and concluded that: (1) there was sufficient cause to excuse his failure to challenge the array on direct appeal but that the petitioner had not made the requisite showing of prejudice; and (2) the habeas claim was not barred under the deliberate bypass rule.

In light of its conclusion that the petitioner had not deliberately bypassed appellate review of his jury array challenge, the habeas court then analyzed the merits of the petitioner's habeas claim. After analyzing the relevant evidence and law, the habeas court concluded that the petitioner had failed to demonstrate that the composition of his jury array violated his constitutional rights.

position of the jury array did not violate the petitioner's constitutional rights. As an alternative ground of affirmance, the respondent asserted that the proper standard by which to analyze the petitioners' failure to raise their jury array challenges at trial was the cause and prejudice standard as articulated in *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), as opposed to the deliberate bypass rule; see *Fay* v. *Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963); upon which the habeas court had relied.

We affirmed the judgment of the habeas court. In so doing, we concluded that the appropriate standard by which to analyze procedural defaults at trial was the *Wainwright* standard of cause and prejudice, and that the petitioner in each case had not demonstrated legally sufficient cause pursuant to that standard. *Johnson* v. *Commissioner of Correction,* supra, 409.

The petitioner in this case then filed a motion for reargument or reconsideration, claiming that sufficient evidence had been presented in the habeas court to meet the cause and prejudice standard. We denied reargument but opened the judgment of affirmance and remanded "the case [to the habeas court] for further proceedings relating to whether there was good cause for [the petitioner's] failure to raise before trial the claim of unconstitutional jury composition that is the basis for his habeas petition." *Jackson* v. *Commissioner of Correction,* 219 Conn. 215, 217, 592 A.2d 910 (1991).

On the remand, the habeas court concluded that there was not adequate cause to excuse the petitioner's failure to pursue the jury array challenge on direct appeal. Specifically, the habeas court concluded "that the petitioner has failed to show that there was good cause for his failure to raise before trial the claim of unconstitu-

tional jury composition as a result of having failed to pursue that claim on direct appeal."[5] This appeal followed.

In his original brief in this appeal, the petitioner contends that the habeas court improperly exceeded the scope of the remand by failing to answer the specific issue set forth in our order, and had instead, outside our mandate, predicated its decision on the petitioner's failure to pursue the jury array challenge on direct appeal.[6] We agree with the petitioner that the habeas court exceeded the scope of the remand by analyzing the petitioner's procedural default on appeal, rather than considering whether there was sufficient cause for his failure to challenge properly the composition of the jury array at trial. Because an unexcused procedural default either at trial or on appeal would preclude the habeas court's consideration of the petitioner's jury array claim, however, the habeas court's focus on his procedural default on appeal, rather than his trial default, is not dispositive in these circumstances.

In light of the habeas court's reliance on a legal ground outside the scope of the remand, and, after reviewing the record, including the history of the briefing in the first appeal from the habeas court's dismissal of the petition of habeas corpus, we concluded that the

---

[5] We recognize that this statement is somewhat ambiguous as to whether the habeas court predicated its decision on a procedural default at trial or on a procedural default on direct appeal. Both parties agree, however, and the entire memorandum of decision plainly demonstrates, that the habeas court's analysis focused on the petitioner's failure to pursue the jury array challenge on direct appeal.

[6] We have previously recognized that, " '[i]n carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein.' " *State* v. *Lafferty,* 191 Conn. 73, 76, 463 A.2d 238 (1983).

petitioner should be granted an opportunity to brief fully the issues relating to procedural default on direct appeal. Nevertheless, because no additional facts beyond those already found by the habeas court are necessary to analyze these legal issues, we concluded that an additional remand to the habeas court was not warranted. Instead, we ordered the parties to file simultaneous supplemental briefs on the following issues: "1. In a habeas corpus proceeding, is the cause and prejudice standard the appropriate standard by which to analyze a petitioner's failure to pursue a constitutional claim on direct appeal? 2. Did the habeas court properly conclude that there was insufficient cause for [the] petitioner's failure to pursue on direct appeal his claim that the composition of the jury array violated his constitutional rights?" These issues are dispositive of this appeal.

I

The petitioner first claims that the habeas court improperly adopted the cause and prejudice standard to analyze the petitioner's failure to pursue the jury array challenge on direct appeal. We disagree.

Prior to 1991, we employed the deliberate bypass rule, as articulated in *Fay* v. *Noia,* supra, in order to determine the reviewability of constitutional claims in habeas corpus proceedings that had not been properly raised at trial or pursued on direct appeal. See, e.g., *Vena* v. *Warden,* 154 Conn. 363, 366–67, 225 A.2d 802 (1966). "In *Fay* v. *Noia,* supra, 438–39, the United States Supreme Court held that federal habeas corpus jurisdiction was not affected by the procedural default, specifically a failure to appeal, of a petitioner during state court proceedings resulting in his conviction. The court recognized, however, a limited discretion in the federal habeas judge to deny relief to an applicant who has deliberately by-passed the orderly procedure of the

state courts and in so doing has forfeited his state court remedies. . . . This deliberate bypass standard for waiver required an intentional relinquishment or abandonment of a known right or privilege by the petitioner personally and depended on his considered choice. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* supra, 411–12.

In *Wainwright* v. *Sykes,* supra, however, the United States Supreme Court subsequently "rejected the sweeping language of *Fay,* which would make federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention. The court upheld a state court's refusal to decide the merits of a claimed *Miranda* violation first raised in a posttrial motion and in state habeas corpus proceedings, contrary to a state contemporaneous objection rule. The court adopted as a new standard for federal habeas review . . . that [i]n a collateral attack upon a conviction, the petitioner must make not only a showing of cause for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice. Thus was born the *Wainwright* cause and prejudice standard for habeas review." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* supra, 412–13.

In *Johnson,* the petitioner's original appeal from the judgment of the habeas court, we reconsidered, in light of *Wainwright,* whether the deliberate bypass was the appropriate standard by which to analyze the reviewability of habeas claims that were procedurally defaulted *at trial.* We decided, after a full review of the relevant considerations, to abandon the deliberate bypass standard of *Fay* v. *Noia,* supra, and to adopt the *Wainwright* cause and prejudice standard as the

proper standard to determine the reviewability of such claims. In *Johnson,* however, we expressly did not reach the related issue of whether the cause and prejudice standard should replace the deliberate bypass rule for claims procedurally defaulted *on appeal.*

We now conclude that the *Wainwright* cause and prejudice standard should be employed to determine the reviewability of habeas claims that were not properly pursued on direct appeal.[7] In *Johnson* v. *Commissioner of Correction,* supra, we outlined the significant policy reasons for abandoning the deliberate bypass rule and adopting the cause and prejudice standard for claims procedurally defaulted at trial. First, as a general matter, we noted that "special problems . . . are likely to arise relating to the feasibility of a second trial when a conviction is set aside by a habeas court rather than by an appellate court. These problems are related mainly to the more extended delay of the second trial that frequently results from a reversal of a conviction by a habeas court. There is no statute of limitation or other time limit that would bar a habeas petition. *United States* v. *Smith,* 331 U.S. 469, 475, 67 S. Ct. 1330, 91 L. Ed. 1610 (1947). Ordinarily the petition may not be filed until appellate remedies have been exhausted . . . . An additional record must be created in the habeas court, which may require extensive testimony. If the petitioner is successful in overturning his conviction, another appeal is almost inevitable." Id., 415–16.

"A direct appeal following a conviction, on the other hand, is subject to strict time limits at each stage of

[7] We are puzzled, to say the least, by the dissent's truculent: (1) fear that we have closed the door to a substantial claim of innocence in fact by a habeas corpus petitioner; and (2) need to remind us of the finality of death. Neither of these issues is before us in this appeal. This record is bereft of any claim of actual innocence by the petitioner, and this court has not yet even considered a death penalty case on direct appeal, let alone on habeas corpus review.

the proceeding. Except for extraordinary cases, an appeal in this state is ordinarily determined within approximately one year from the date it was filed. The greater time lapse that results when a second trial is ordered by a habeas court has a serious impact on the availability of witnesses and other evidence for the second trial. Memories fade with the passage of time, exhibits are lost, and other evidence is less likely to be available. Appellate counsel would have less incentive to raise on appeal all arguable constitutional claims of the defendant if another opportunity to raise such claims were available in the habeas court. We are convinced that these consequences would be sufficiently harmful to the administration of justice in this state as to require that [we depart from the application of the deliberate bypass rule] . . . .

"If deliberate bypass were the sole barrier to such review, it could seldom be invoked for a default at trial. It is not common practice and would be unduly cumbersome to establish a record in the trial court showing that the defendant had personally made a knowledgeable waiver of his constitutional procedural rights on each of the myriad occasions that arise during a criminal trial when such rights are involved. Most of these choices during trial, such as whether to move for suppression of evidence or to cross-examine a particular witness, must necessarily be left to counsel, subject to the requirement that his performance satisfy reasonable standards of competency. In those rare instances in which a deliberate bypass is found, of course, habeas review would be barred for that reason alone, apart from the cause and prejudice standard." Id., 416–17.

The "special problems" regarding procedural defaults at trial that we noted in *Johnson* apply equally to procedural defaults on direct appeal, and militate in favor of our adoption of one standard by which to measure procedural defaults occurring at trial or on

direct appeal. As the United States Supreme Court has noted in specifically adopting the cause and prejudice standard to analyze procedural defaults on direct appeal: "A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. . . . [Such rules] '[afford] . . . the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. . . . This type of rule promotes not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.' " *Murray* v. *Carrier,* 477 U.S. 478, 490–91, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); see also *Roman* v. *Abrams,* 822 F.2d 214, 222–23 (2d Cir. 1987) (habeas review of jury selection challenge unavailable absent showing of cause and prejudice for petitioner's failure to raise claim on direct appeal), cert. denied, 489 U.S. 1052, 109 S. Ct. 1311, 103 L. Ed. 2d 580 (1989).

We also recognize that the judicial system's legitimate interest in procedural rules is undermined regardless of whether the breach results from counsel's "ignorance or inadvertence rather than a deliberate decision, tactical or not, to abstain from raising the claim."[8] *Murray* v. *Carrier,* supra, 491. Just as with

---

[8] In adopting the cause and prejudice standard for procedural defaults occurring at trial, we recognized that, particularly in jury array challenges, the deliberate bypass rule would encourage astute counsel to "sandbag" the court by saving their claims until habeas review. *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 418, 589 A.2d 1214 (1991). This possibility exists because if the time limitations for bringing a challenge at trial were followed, any constitutional defect in the array could be cured, and the trial could be continued. Consequently, "[s]trong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim

procedural defaults occurring at trial, the costs of violation of our procedural rules are incurred regardless of the kind of attorney error that led to the failure of counsel to pursue a claim on appeal.

Furthermore, in a practical sense, the cause and prejudice standard is at least equally appropriate to the failure to raise a claim on appeal as it is to the failure to raise a claim in the trial court. One of the underlying rationales for preferring the cause and prejudice standard to the deliberate bypass rule, regarding trial court defaults, is that it is unrealistic and inconsistent with the proper role of trial counsel to require consultation with the client regarding every legal or tactical consideration.

The same is true of appellate counsel. It is unrealistic and inconsistent with the proper role of appellate counsel to require consultation with the client, and presumably to secure the client's consent, with respect to the decision of whether to raise or forego particular legal claims on appeal. Indeed, applying the deliberate bypass rule to such decisions of appellate advocacy would create the incentive for counsel to remain silent, rather than to confer with the client because ultimately the client would be better served in a habeas action by remaining ignorant of potential claims on direct appeal.

Consequently, contrary to the petitioner's claim, attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our

---

could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult." (Internal quotation marks omitted.) Id.

The same danger of "sandbagging" would exist, albeit to a lesser extent, if we were to continue to apply the deliberate bypass rule to procedural defaults on appeal. The defendant's counsel on appeal might well conclude that the best strategy is to raise a few promising claims on appeal, while reserving others for later habeas review should the direct appeal be unsuccessful. See *Murray* v. *Carrier*, 477 U.S. 478, 492, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

rules of appellate procedure. Cf. *Valeriano* v. *Bronson,* 209 Conn. 75, 85, 546 A.2d 1380 (1988) (ineffective assistance of counsel claim for failing to raise claim on direct appeal automatically satisfies the deliberate bypass requirement). In light of these considerations, therefore, we conclude that the cause and prejudice standard should be employed to determine the reviewability of a habeas claim that was not properly pursued on direct appeal.

## II

The petitioner next claims that, even if the cause and prejudice standard is the appropriate standard by which to analyze his failure to pursue his claim on direct appeal, the habeas court improperly concluded that there was insufficient cause for the petitioner's failure to pursue on direct appeal his claim that the composition of the jury array violated his constitutional rights. We are unpersuaded.

As noted above, the trial court denied Buckley's request for a continuance for additional time to subpoena witnesses whose testimony was necessary for his jury array challenge. It was this denial that prevented the petitioner from asserting his jury array challenge at trial. The petitioner, however, did not challenge this denial on appeal.

We have repeatedly recognized, however, that the denial of a request for a continuance is appealable. See, e.g., *State* v. *Walker,* 215 Conn. 1, 9, 574 A.2d 188 (1990). Consequently, the petitioner was free to challenge the denial of the continuance on direct appeal if he believed that the denial had been improper under the circumstances of the case. If he then convinced the reviewing court that the denial was reversible error, he would have been entitled, on remand to the trial court, to present the evidence regarding the jury array that he had originally intended to present. Under that

scenario, however, if his jury array challenge were successful, a new trial would have ensued shortly after the direct appeal, rather than now, eleven years later.

Despite the opportunity to challenge the denial of the continuance on direct appeal, the petitioner claims that adequate cause existed for this failure because a factor external to the defense prohibited him from challenging the array at trial. This claim is predicated on prior decisions that have found adequate cause for a petitioner's procedural default in circumstances in which the default is not attributable to attorney error. See, e.g., *Murray* v. *Carrier,* supra, 488; *Reed* v. *Ross,* 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984); *Brown* v. *Allen,* 344 U.S. 443, 486, 73 S. Ct. 397, 97 L. Ed. 469 (1953). The United States Supreme Court has summarized the rule as follows: "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* v. *Washington,* [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by officials' . . . made compliance impracticable, would constitute cause under this standard." *Murray* v. *Carrier,* supra.

In the present case, the petitioner argues that the trial court's refusal to allow him additional time to subpoena the witnesses necessary to present his jury array

challenge constituted "some interference by officials" thereby creating adequate cause for his failure to challenge the array at trial. Without expressing any opinion as to the legal accuracy of this claim, we simply note that the petitioner's argument misses the point.[9] Even if the denial of the continuance constituted cause for the petitioner's failure to challenge the jury array at trial, the trial court's action did not prohibit the petitioner from raising the claim on *direct appeal* that the trial court had abused its discretion by failing to grant the continuance. To hold otherwise would be to undermine the important policies underlying our appellate procedural rules and our interest in the timely and efficient resolution of claims at trial and on appeal. Consequently, the petitioner's claim of cause based on the "interference by officials," even if adequate to excuse his procedural default at trial, is not sufficient cause for his procedural default on direct appeal.

---

[9] The petitioner has not cited a single case in which a court considered the question of whether the trial court's decision on a motion could itself be "interference by officials" under the cause and prejudice standard. The cases cited by the petitioner for this proposition either concluded that the petitioner had, in fact, satisfied the state's procedural rules; see, e.g., *James* v. *Kentucky,* 466 U.S. 341, 348, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984); *Carbajol* v. *Fairman,* 700 F.2d 397, 399 (7th Cir. 1983); *Huffman* v. *Wainwright,* 651 F.2d 347, 352 (5th Cir. 1981); *Pedrero* v. *Wainwright,* 590 F.2d 1383, 1390 (5th Cir.), cert. denied, 444 U.S. 943, 100 S. Ct. 299, 62 L. Ed. 2d 310 (1979); *White* v. *Estelle,* 566 F.2d 500, 501 n.1 (5th Cir. 1978); or focused on the action of government officials other than the trial court itself. See, e.g., *Julius* v. *Jones,* 875 F.2d 1520, 1525 (11th Cir.) (prosecutor's failure to produce *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 [1963] material), cert. denied, 493 U.S. 900, 110 S. Ct. 258, 107 L. Ed. 2d 207 (1989); *Buffalo* v. *Sunn,* 854 F.2d 1158, 1165–66 (9th Cir. 1988) (pro se petitioner unable to file state petition for certification because he had been held in "lock down" by prison officials). Presumably, therefore, the petitioner's argument in the present case may devolve into the contention that there in fact was no procedural fault at trial because the petitioner had adequately attempted to bring a challenge to the jury array. Again, because we predicate our decision on the petitioner's procedural default on appeal, we need not address this argument.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and NOR-COTT, Js., concurred.

BERDON, J., dissenting. At the very least, we should continue to employ the deliberate bypass standard to determine the reviewability of habeas claims that were not properly pursued on *direct appeal.* The majority's decision closes the door to petitioners who may have meritorious claims to challenge their confinement and who may, in fact, be innocent, but who, through no fault of their own, are precluded from pursuing their claims.

I must confess that the scales weigh heavily, at least for me, in favor of granting a new trial to persons whose claims cast a substantial cloud on the validity of their convictions. The rules established today have equal application for those who are incarcerated for life as well as those who are awaiting the death penalty. The majority, emulating the United States Supreme Court, restricts habeas corpus in the name of finality of decisions. Lest we forget, there is nothing more final than the imposition of the death penalty.

Furthermore, as in the present case, the vast majority of criminal defendants are represented either by public defenders or by special public defenders assigned by the *state.* These competent and dedicated attorneys carry heavy caseloads, which often play a role in procedural defaults. In *State* v. *Weber,* 221 Conn. 84, 89, 602 A.2d 973 (1992) (*Berdon, J.,* dissenting), for example, this court denied the defendant's petition for certification for review of the Appellate Court's dismissal of his appeal because the public defender had failed to file a timely brief. The public defender was unable to meet the filing deadline because of his caseload and because he was defending another per-

son who was on trial for felony murder. The state, therefore, must take its share of the blame for the procedural defaults.

Finally, in most cases, procedural defaults do not result from the defendant's failure to abide by the rules, but from defense counsel's actions. I could accept the new standard advanced by the majority today if each defendant could be assigned a perfect appellate attorney. That is not possible given human fallibility; even great trial advocates make mistakes. In many cases, these mistakes may not reach the level of ineffective assistance of counsel and therefore leave the defendant without a remedy to correct any injustice.[1]

The majority rejects the deliberate bypass standard for essentially two reasons. First, the majority notes the problems associated with granting a new trial years after the alleged crime. I too recognize the difficulty of conducting a second trial when memories have faded and evidence is not easily available. In many cases, however, these problems are ameliorated by the rules of evidence permitting admission of a witness' testimony at a prior proceeding under certain circumstances. See, e.g., *State* v. *Outlaw,* 216 Conn. 492, 504–506, 582 A.2d 751 (1990) (trial court properly admitted transcribed testimony of witness who had testified at the probable cause hearing but was unavailable at trial); see also *In re Durant,* 80 Conn. 140, 151–52, 67 A. 497 (1907); C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. Sup. 1992) § 11.4.1. In addition, a witness' prior inconsistent statement could be introduced into evi-

---

[1] In a claim for ineffective assistance of counsel the "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." *Herbert* v. *Manson,* 199 Conn. 143, 144–45, 506 A.2d 98 (1986).

dence for substantive purposes under certain circumstances. *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

Relying on *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 416–17, 589 A.2d 1214 (1991),[2] the majority claims that under the deliberate bypass standard there must be a showing that "the defendant had personally made a knowledgeable waiver of his constitutional procedural rights" and uses this extreme interpretation to reject the deliberate bypass rule. Whether there has been a "deliberate bypass" on appeal should not depend on whether the defendant made a personal, deliberate choice not to pursue a certain claim, but rather, on whether the choice was made by appellate counsel. This distinction is reasonably based upon the role of appellate counsel in relation to the decision of what issues should be pursued on appeal. In *Jones* v. *Barnes,* 463 U.S. 745, 754, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), the United States Supreme Court held that appellate defense counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. As a result, defendants should not be precluded from pursuing habeas claims that their attorneys chose not to pursue. In addition, the difficulties of establishing "a record in the trial court showing that the defendant had personally made a knowledgeable waiver of his constitutional procedural rights on each of the myriad occasions that arise dur-

---

[2] In *Watley* v. *Commissioner of Correction,* 227 Conn. 147, 628 A.2d 1314 (1993), I joined the majority in remanding the case to the habeas court to be reviewed under the "cause and prejudice" standard because of this court's decision in *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 589 A.2d 1214 (1991), and the probability that the standard could be met. In *Watley,* the habeas court denied the petitioner's claim on the assumption that it was not to take additional evidence as a result of a prior remand. Nevertheless, I am not prepared to endorse *Johnson* for trial defects, and leave the issue for another day.

ing a criminal trial''; *Johnson* v. *Commissioner of Correction,* supra, 417; are not involved on appeal.[3]

In regard to the defendant's personal waiver of claims, the majority suggests that the deliberate bypass rule would encourage defense attorneys to "remain silent, rather than to confer with the client because ultimately the client would be better served in a habeas action by remaining ignorant of potential claims on direct appeal." Tailoring the deliberate bypass rule as indicated above would put this claim to rest. Furthermore, here, as in *Wainwright* v. *Sykes,* 433 U.S. 72, 102, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), "the [United States Supreme] Court points to no cases or commentary arising during the past 15 years of actual use of the [*Fay* v. *Noia,* 372 U.S. 391, 439, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963) deliberate bypass] test to support this criticism."

Even if the "cause and prejudice" standard is applied, I would get to the merits of the petition in this case. The defendant is an African-American who sought to challenge the pool of jurors available for jury selection at trial, claiming that African-Americans were underrepresented as a result of the town quota system. Indeed, the United States Court of Appeals for the Second Circuit in *Alston* v. *Manson,* 791 F.2d 255 (2d Cir. 1986), held "that the town quota system for selecting veniremen established by General Statutes (Rev. to

---

[3] In *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 417, 589 A.2d 1214 (1991), Justice Shea pointed out the following: "If deliberate bypass were the sole barrier to such review, it could seldom be invoked for a default at trial. It is not common practice and would be unduly cumbersome to establish a record in the trial court showing that the defendant had personally made a knowledgeable waiver of his constitutional procedural rights on each of the myriad occasions that arise during a criminal trial when such rights are involved. Most of these choices during trial, such as whether to move for suppression of evidence or to cross-examine a particular witness, must necessarily be left to counsel, subject to the requirement that his performance satisfy reasonable standards of competency."

1975) § 51-220 had resulted in underrepresentation of black people in the pool of prospective jurors and grand jurors serving New Haven County in 1975, when the trial of the petitioners in that case took place, and that this disparity violated the principle of equal protection." *Johnson* v. *Commissioner of Correction,* supra, 406–407.

The habeas court found on remand the following relevant facts: "The petitioner was represented at his criminal trial by Attorney John Buckley, who testified at the habeas hearing. Sometime prior to the petitioner's trial, Attorney Buckley reached an agreement with then Assistant State's Attorney Patrick Clifford, who was then the prosecutor regarding petitioner's case. The agreement reached was that at the petitioner's trial, Attorney Buckley could rely on evidence presented in another case that he and Attorney Clifford had tried together wherein a jury array challenge was presented. Attorney Buckley filed a motion challenging the array of the selection or the method of selecting jurors in the State of Connecticut on behalf of the petition[er] in his underlying criminal trial. The challenge to the array was filed within several days prior to the date of trial. The evidence that Attorney Buckley had presented in a different criminal case challenging the method of selecting jurors would be the same evidence that would have been presented in the petitioner's case. Rather than Assistant State's Attorney Patrick Clifford prosecuting the petitioner's case, it was prosecuted by Assistant State's Attorney Robert Devlin. Attorney Devlin was unwilling to stipulate to the use of the evidence used in the prior challenge to be used in the petitioner's challenge. When informed by Attorney Devlin that the evidence used in the prior case would not be stipulated to in the petitioner's case, Attorney Buckley informed the trial court that he wished to proceed with the jury challenge and would need time to subpoena the appropriate witnesses. The request of Attor-

ney Buckley to have until the following day to subpoena witnesses was denied by the trial court. An exception was taken to this ruling and the challenge to the array was never withdrawn by Attorney Buckley."

In denying the defendant's request for a continuance in order to enable him to summon witnesses to challenge the array, the following colloquy occurred between the trial judge and defense counsel:

"The Court: Are you ready to produce these people?

"Mr. Buckley: I will need time to subpoena them, Your Honor. What can I say to you?

"The Court: So you are not ready to go forward now with this motion?

"Mr. Buckley: I think, Your Honor, that is not quite proper.

"The Court: Well, with any evidence.

"Mr. Buckley: You mean right at this minute?

"The Court: Yes.

"Mr. Buckley: No, but I think I should deserve the consideration to be able to at least subpoena the people or get them here within the next day.

"The Court: Are your finished?

"Mr. Buckley: Yes, Your Honor.

"The Court: In spite of your brilliant and impassioned presentation, Mr. Buckley, the motion is denied.

"Mr. Buckley: Exception.

"The Court: Exception is noted."

The majority asserts that "[e]ven if the denial of the continuance constituted cause for the petitioner's failure to challenge the jury array at trial, the trial court's action did not prohibit the petitioner from raising the

claim on *direct appeal* that the trial court had abused its discretion by failing to grant the continuance." (Emphasis in original.) I can only find one criminal case in which this court has held that the trial court's denial of a motion for continuance constituted an abuse of discretion. *State* v. *Williams,* 200 Conn. 310, 321, 511 A.2d 1000 (1986). In *State* v. *Beckenbach,* 1 Conn. App. 669, 476 A.2d 591 (1984), the Appellate Court held that the trial court had abused its discretion in denying the defendant's motions for continuance, but this court reversed that ruling. *State* v. *Beckenbach,* 198 Conn. 43, 501 A.2d 752 (1985).[4] This court has granted the trial court such broad discretion in determining whether to grant or deny a continuance that an appeal on that issue is for all practical purposes frivolous. Even in *State* v. *Walker,* 215 Conn. 1, 9, 574 A.2d 188 (1990), on which the majority relies, the defendant's claim was dismissed. When the trial court's discretion is so great that it is virtually impossible to obtain reasonable review, the omission of that claim, especially when there is no proof that it was a deliberate omission, should satisfy the "cause" standard.

In addition, the defendant's substantive claim goes to the core of our judicial process. "In our system of justice, not only must the accused be afforded a fair trial, but equally important there must be a perception of fairness by the community and the accused. Anything less not only undermines the credibility of this branch of government but also threatens the very fab-

---

[4] In *State* v. *Beckenbach,* 198 Conn. 43, 501 A.2d 752 (1985), this court upheld the trial court's refusal to grant a continuance because defense counsel was on trial in another case. This court held that "the matter of a continuance is traditionally within the discretion of the trial judge, which will not be disturbed absent a clear abuse. . . . It must be shown that the trial judge acted arbitrarily and substantially impaired [the] defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion. The test is a stringent one." (Citations omitted; internal quotation marks omitted.) Id., 47.

ric of our democracy. And, of course, the perception that the person is being tried before a fair jury drawn from a cross-section of the community is high on the agenda in achieving that goal." *State* v. *Tillman,* 220 Conn. 487, 514–15, 600 A.2d 738 (1991) (*Berdon, J.,* dissenting), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). Neither the accused in this case nor the African-American community can possibly believe that the defendant was justly convicted when his jury was not selected from a pool of persons representing a fair cross section of the population. Accordingly, I would find that the "prejudice" has been established. See *State* v. *Nims,* 180 Conn. 589, 595–96, 430 A.2d 1306 (1980) (attempt to stack a jury panel by intentionally including members of a discernable class runs afoul of both due process and the right to jury trial).

Finally, the majority continues its assault on the writ of habeas corpus. Last year, I cautioned that there was a discernible trend to undermine this " ' "bulwark against convictions that violate 'fundamental fairness.' " ' *Gaines* v. *Manson,* 194 Conn. 510, 516, 481 A.2d 1084 (1984). . . ." *Safford* v. *Warden,* 223 Conn. 180, 206, 612 A.2d 1161 (1992) (*Berdon, J.,* dissenting); see also *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 467 n.1, 610 A.2d 598 (1992) (*Berdon, J.,* dissenting). My fears, unfortunately, were not exaggerated.

Accordingly, I respectfully dissent.