## LUIS ALMEDINA *v.* COMMISSIONER OF CORRECTION
### (AC 28132)

Flynn, C. J., and Robinson and Pellegrino, Js.

Argued March 12—officially released July 8, 2008

*Jeffrey C. Kestenband*, special public defender, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Luis Almedina, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly determined that his guilty plea was knowing, intelligent and voluntary. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. The petitioner was involved in a shooting on the evening of February 18, 1994. He was charged with murder in violation of General Statutes § 53a-54a. On October 2, 1995, the petitioner pleaded guilty under the *Alford* doctrine[1] to manslaughter in the first degree with a

---

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept

firearm in violation of General Statutes § 53a-55a and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a).

The plea agreement provided that the petitioner would receive a sentence of twenty years imprisonment but have the right to argue for as few as fifteen years. The agreement also provided that the petitioner could be subjected to a longer sentence if the state obtained additional incriminating evidence against him between the time of the plea and the date of sentencing. If the petitioner was to be subjected to a sentence longer than twenty years, however, the agreement provided that he could withdraw his plea and proceed to trial. If the petitioner elected to withdraw his plea and to proceed to trial, the state could reinstitute the murder charge. The trial court canvassed the petitioner and determined that his plea was made knowingly and voluntarily with the assistance of competent counsel. The court accepted the petitioner's plea and set a date for sentencing.

The initial sentencing proceeding took place on November 17, 1995. At that time, the state revealed that it had obtained substantial additional incriminating evidence as envisioned in the plea agreement.[2] The court then explained to the petitioner his options in light of the additional evidence: "And so your options are this . . . that you may receive more than twenty years in jail [and] up to forty years in jail . . . . So, now the option is that knowing that you could receive up to forty years in jail under this statute that you've pleaded under, you would have the option to request

the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 736 n.1, 930 A.2d 644 (2007).

[2] The state's additional evidence consisted of information obtained from two eyewitnesses who were members of the same gang as the petitioner, and who were present the night of the shooting and willing to testify that the petitioner was the shooter.

that you be sentenced under that statute or, if the court were to give you more than twenty years, and I would tell you at the time of sentencing that then you would have the option of withdrawing your plea, taking everything that we've done back so far and going to trial. In which case it is the court's understanding that you would be tried under the charge of murder, which carries a minimum sentence of twenty-five years in jail up to life, which, in Connecticut, is sixty years in jail." The petitioner stated that he understood his options, and the court granted a continuance so he could consider those options with the advice of counsel.

On December 11, 1995, sentencing took place. The prosecutor requested that the court impose the maximum sentence of forty years available under the plea on the basis of the additional incriminating evidence uncovered by the state. The petitioner's counsel argued that regardless of the additional evidence, the maximum penalty for manslaughter is twenty years and that "it would be inappropriate for this essentially one act, for which there's an *Alford* plea—for this essentially one act of manslaughter to result in a [total effective sentence] that would be greater than twenty years." The court then informed the petitioner twice of his right to proceed to trial. The petitioner elected not to exercise this right by withdrawing his plea.

The court imposed a sentence of twenty years incarceration for manslaughter in the first degree with a firearm and twenty years incarceration for conspiracy to commit assault in the first degree. The court ordered that the sentences run consecutively for a total effective sentence of forty years incarceration. The petitioner did not file a direct appeal.

Eight years after he was sentenced, the petitioner filed a petition for a writ of habeas corpus, alleging that his conviction was illegal because his plea was not made

knowingly, intelligently and voluntarily. Specifically, he claimed that the trial court (1) did not explain the consequences of not withdrawing his plea and (2) misled him to believe that he would get out of prison sooner if he decided to plead guilty instead of proceeding to trial. The habeas court found that the trial court had conducted a full and thorough canvass of the petitioner regarding his plea agreement on October 2, 1995, and that on that date and on November 17, 1995, the petitioner stated that he understood the plea agreement and what would happen if the state discovered substantial additional evidence against him. The court concluded that the petitioner's plea was made knowingly, intelligently and voluntarily. Accordingly, the habeas court rejected the petitioner's claim on the merits and rendered judgment denying the petition for a writ of habeas corpus. The court subsequently granted the petition for certification to appeal to this court. This appeal followed.

The petitioner's appeal challenges the validity of his guilty plea. To be valid, guilty pleas must be made knowingly and voluntarily.[3] *State* v. *Perez*, 85 Conn. App. 27,

---

[3] The validity of a guilty plea can be challenged before sentencing pursuant to Practice Book § 39-26 and on direct appeal pursuant to Practice Book § 43-22. See *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 450–51, 636 A.2d 388, cert. denied, 228 Conn. 929, 640 A.2d 115 (1994). In the present case, the petitioner failed to raise his claim regarding the validity of his guilty plea before sentencing or on direct appeal—he raised the claim for the first time before the habeas court.

In habeas proceedings, the appropriate standard for reviewability of a constitutional claim not raised before sentencing or on direct appeal is the cause and prejudice standard pursuant to *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 133–34, 136, 629 A.2d 413 (1993). The petitioner's burden of establishing cause and prejudice, however, "does not arise until after the respondent [the commissioner of correction] raises the claim of procedural default in its return." *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 734, 779 A.2d 156 (2001). Because the respondent failed to raise the affirmative defense of procedural default in her return, the petitioner was not required to prove cause and prejudice.

31, 856 A.2d 452, cert. denied, 271 Conn. 933, 859 A.2d 931 (2004). "[T]he trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement. [U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . When a defendant pleads guilty, he waives important fundamental constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . .

"We, therefore, require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . In order to make a knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including all relevant information concerning the sentence. . . . The defendant must also be aware of the actual value of any commitments made to him by the court . . . because a realistic assessment of such promises is essential in making an intelligent decision to plead guilty. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . [W]e conduct a plenary review of the circumstances surrounding [a] plea to determine if it was knowing and voluntary." (Citations omitted; internal quotation marks omitted.) Id., 31–32.

I

The petitioner argues that his plea was not knowing, intelligent and voluntary because the court did not explain the consequences of not withdrawing his plea. Specifically, he argues that his plea was not knowing,

intelligent and voluntary because the court did not inform him of its intention to sentence him to forty years incarceration. We are not persuaded.

The record reflects that the court conducted a full and thorough canvass of the petitioner on October 2, 1995, regarding his guilty plea, after which the petitioner stated that he understood the plea agreement. "It is well established that [a] trial court may properly rely on . . . the responses of the [petitioner] at the time [he] responded to the trial court's plea canvass." (Internal quotation marks omitted.) *State* v. *Stith*, 108 Conn. App. 126, 131, 946 A.2d 1274 (2008); see also *Carey* v. *Commissioner of Correction*, 86 Conn. App. 180, 185–86, 860 A.2d 776 (2004) (upholding habeas court's finding that plea knowingly and voluntarily given when, although petitioner claimed he had taken medication on date he entered plea and that this made him confused, there was no evidence that described medication or its effect on petitioner), cert. denied, 272 Conn. 915, 866 A.2d 1283 (2005). Moreover, the petitioner testified at his habeas hearing that he understood that the plea agreement called for him to be sentenced to twenty years and that if new information arose, he would be facing forty years. Furthermore, the petitioner also knew that he had the option to withdraw his guilty plea and proceed to trial.

Although the court did not explicitly inform the petitioner of its intention to impose a sentence greater than twenty years, the record reflects that the petitioner was aware at the December 11, 1995 sentencing hearing that the court planned on imposing a sentence greater than twenty years incarceration. Specifically, the petitioner's attorney stated: "[The petitioner] does acknowledge—and going forward with the sentencing proceeding at this time is an acknowledgement of the fact that the state's case is considerably stronger today than it was a month ago, at a time that we were proceeding toward

an agreement that was calling for a—a specific sentence that is probably going to be less than what Your Honor will be imposing at this time." The petitioner's argument that prior to sentencing he was unaware of the court's intention of imposing a sentence greater than twenty years, therefore, is belied by the record. Moreover, our review of the record reveals no evidence that the petitioner was unaware of his potential sentence or that he could withdraw his guilty plea. Accordingly, this claim fails.

## II

The petitioner's next claim is that his plea was not knowing, intelligent and voluntary because the court misled him to believe that he would receive less prison time by pleading guilty versus proceeding to trial. Specifically, the petitioner argues that the following excerpt from the sentencing transcript rendered his plea invalid. The court stated: "And the reason you're not being sentenced for murder is because . . . you entered your plea before the state was able to find these two witnesses. . . . Had that not been the case . . . you would be going to jail for a longer period of time than you are today." The petitioner argues that this quoted excerpt was misleading because a murder conviction would have exposed him to a sentence of twenty-five to sixty years, which means he possibly could have received a shorter sentence for a murder conviction than the forty year sentence he ultimately received under the plea agreement. We are not persuaded.

The record clearly reflects that the petitioner was aware of the possible sentence that he could receive if convicted of murder prior to the court making the allegedly incorrect statements.[4] Moreover, the petitioner's argument that "[t]he court's incorrect statement

[4] The November 17, 1995 transcript reflects the following colloquy:

"The Court: [I]t is this court's understanding that you would be tried under the charge of murder, which carries a minimum sentence of twenty-five years in jail up to life, which, in Connecticut, is sixty years in jail. Do

erroneously convinced [him] that pleading guilty was necessarily more favorable than proceeding to trial" finds no support in the record. The petitioner's habeas testimony makes clear that he understood his plea agreement and the potential sentence he faced if he proceeded to trial. Nothing in the record indicates anything but that the petitioner's plea was knowing, intelligent and voluntary. Accordingly, this claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

you understand that?
"[The Petitioner]: Yes. I understand that."