STATE OF CONNECTICUT *v.* LUIS ALMEDINA
(AC 29671)

Bishop, DiPentima and Hennessy, Js.

Argued November 10, 2009—officially released January 19, 2010

*Mary Beattie Schairer*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Luis Almedina, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence, which he filed pursuant to Practice Book § 43-22.[1] On appeal, the defendant claims that the court improperly dismissed his motion on the basis of collateral estoppel. We affirm the judgment of the trial court.

The procedural history of this case was set forth in this court's opinion in *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008), in which this court affirmed the habeas court's denial of a petition for a writ of habeas corpus filed by the defendant stemming from the same conviction. "The [defendant] was involved in a shooting on the evening of February 18, 1994. He was charged with murder in violation of General Statutes § 53a-54a. On October 2, 1995, the [defendant] pleaded guilty under the *Alford* doctrine[2] to

---

[1] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a).

"The plea agreement provided that the [defendant] would receive a sentence of twenty years imprisonment but have the right to argue for as few as fifteen years. The agreement also provided that the [defendant] could be subjected to a longer sentence if the state obtained additional incriminating evidence against him between the time of the plea and the date of sentencing. If the [defendant] was to be subjected to a sentence longer than twenty years, however, the agreement provided that he could withdraw his plea and proceed to trial. If the [defendant] elected to withdraw his plea and proceed to trial, the state could reinstitute the murder charge. The trial court canvassed the [defendant] and determined that his plea was made knowingly and voluntarily with the assistance of competent counsel. The court accepted the [defendant's] plea and set a date for sentencing.

"The initial sentencing proceeding took place on November 17, 1995. At that time, the state revealed that it had obtained substantial additional incriminating evidence as envisioned in the plea agreement. The court then explained to the [defendant] his options in light of the additional evidence: 'And so your options are this . . . that you may receive more than twenty years in jail [and] up to forty years in jail . . . . So, now the option is that knowing that you could receive up to forty years in jail under this statute that you've pleaded under, you would have the option to request that you be sentenced under that statute or, if the court were to give you more than twenty years, and I would tell you at the time of sentencing that then you would have the option of withdrawing your plea, taking everything that we've done back so far and going to trial. In which

case it is the court's understanding that you would be tried under the charge of murder, which carries a minimum sentence of twenty-five years in jail up to life, which, in Connecticut, is sixty years in jail.' The [defendant] stated that he understood his options, and the court granted a continuance so he could consider those options with the advice of counsel.

"On December 11, 1995, sentencing took place. The prosecutor requested that the court impose the maximum sentence of forty years available under the plea on the basis of the additional incriminating evidence uncovered by the state. The [defendant's] counsel argued that regardless of the additional evidence, the maximum penalty for manslaughter is twenty years and that 'it would be inappropriate for this essentially one act, for which there's an *Alford* plea—for this essentially one act of manslaughter to result in a [total effective sentence] that would be greater than twenty years.' The court then informed the [defendant] twice of his right to proceed to trial. The [defendant] elected not to exercise this right by withdrawing his plea.

"The court imposed a sentence of twenty years incarceration for manslaughter in the first degree with a firearm and twenty years incarceration for conspiracy to commit assault in the first degree. The court ordered that the sentences run consecutively for a total effective sentence of forty years incarceration. The [defendant] did not file a direct appeal.

"Eight years after he was sentenced, the [defendant] filed a petition for a writ of habeas corpus, alleging that his conviction was illegal because his plea was not made knowingly, intelligently and voluntarily. Specifically, he claimed that the trial court (1) did not explain the consequences of not withdrawing his plea and (2) misled him to believe that he would get out of prison sooner if he decided to plead guilty instead of proceeding to trial.

The habeas court found that the trial court had conducted a full and thorough canvass of the [defendant] regarding his plea agreement on October 2, 1995, and that on that date and on November 17, 1995, the [defendant] stated that he understood the plea agreement and what would happen if the state discovered substantial additional evidence against him. The court concluded that the [defendant's] plea was made knowingly, intelligently and voluntarily." *Almedina* v. *Commissioner of Correction*, supra, 109 Conn. App. 2–5. This court affirmed the judgment of the habeas court, stating: "The record reflects that the court conducted a full and thorough canvass of the [defendant] on October 2, 1995, regarding his guilty plea, after which the [defendant] stated that he understood the plea agreement. . . . Moreover, the [defendant] testified at his habeas hearing that he understood that the plea agreement called for him to be sentenced to twenty years and that if new information arose, he would be facing forty years. Furthermore, the [defendant] also knew that he had the option to withdraw his guilty plea and proceed to trial.

"Although the court did not explicitly inform the [defendant] of its intention to impose a sentence greater than twenty years, the record reflects that the [defendant] was aware at the December 11, 1995 sentencing hearing that the court planned on imposing a sentence greater than twenty years incarceration. Specifically, the [defendant's] attorney stated: '[The defendant] does acknowledge—and going forward with the sentencing proceeding at this time is an acknowledgement of the fact that the state's case is considerably stronger today than it was a month ago, at a time that we were proceeding toward an agreement that was calling for a—a specific sentence that is probably going to be less than what Your Honor will be imposing at this time.' The [defendant's] argument that prior to sentencing he was

unaware of the court's intention of imposing a sentence greater than twenty years, therefore, is belied by the record. Moreover, our review of the record reveals no evidence that the [defendant] was unaware of his potential sentence or that he could withdraw his guilty plea." (Citations omitted.) Id., 7–8. This court concluded: "The [defendant's] habeas testimony makes clear that he understood his plea agreement and the potential sentence he faced if he proceeded to trial." Id., 9.

In September, 2007, after the habeas court had denied the defendant's habeas petition, but before the appeal had been decided, the defendant filed a motion to correct an illegal sentence. In that motion, the defendant claimed that he was sentenced in an illegal manner because the court imposed "the maximum sentence allowed by law without [affording him] the opportunity to withdraw his [guilty] plea" and that the court exceeded the sentence that was specified in his plea agreement and that the "court did not keep its plea agreement promises . . . ." The defendant asked that the court resentence him "to the original plea agreed upon," which he claimed was a sentence of twenty years with the right to argue for as little as fifteen. Following a hearing on the defendant's motion to correct an illegal sentence, the court dismissed the motion under the collateral estoppel doctrine on the basis that the motion raised an issue that had already been resolved in the defendant's prior habeas action. This appeal followed.

The determination of whether the court properly applied the doctrine of collateral estoppel is a question of law over which we exercise plenary review. *Byars* v. *Berg*, 116 Conn. App. 843, 846, 977 A.2d 734 (2009). "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion,

is that aspect of res judicata which prohibits the relitiga-
tion of an issue when that issue was actually litigated
and necessarily determined in a prior action between
the same parties upon a different claim. . . . For an
issue to be subject to collateral estoppel, it must have
been fully and fairly litigated in the first action. It also
must have been actually decided and the decision must
have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised
in the pleadings or otherwise, submitted for determina-
tion, and in fact determined. . . . An issue is necessar-
ily determined if, in the absence of a determination of
the issue, the judgment could not have been validly
rendered. . . . If an issue has been determined, but the
judgment is not dependent [on] the determination of the
issue, the parties may relitigate the issue in a subsequent
action." (Citations omitted; internal quotation marks
omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d
416 (2009). Thus, we must determine whether the issue
raised by the defendant in his motion to correct an
illegal sentence was already litigated and determined
in the earlier habeas action.

In his motion to correct an illegal sentence, the defen-
dant claimed that the court failed to afford him the
opportunity to withdraw his guilty plea in compliance
with Practice Book § 39-10. Section 39-10 provides, in
relevant part, that if a court decides to reject a plea
agreement, the court shall "afford the defendant the
opportunity then to withdraw the plea . . . ." The
defendant argued that Practice Book § 39-10 is manda-
tory and, because the court did not explicitly give him
the opportunity to withdraw his plea at the December
11, 1995 hearing, he was illegally sentenced.

In his second amended petition for a writ of habeas
corpus, the defendant claimed that "the [c]ourt did not
adequately canvass him as to whether he wanted to

proceed with sentencing or withdraw his guilty pleas, because the [c]ourt never asked [him] how he wanted to proceed and did not engage in the typical colloquy that constitutes a proper canvass." Although the defendant's habeas claim did not specifically implicate Practice Book § 39-10, for the habeas court to have determined whether the defendant had been properly canvassed, it had to find that the sentencing court complied with all applicable statutes and rules of practice. In other words, although the habeas court examined the defendant's canvass in the broader context of whether the defendant's plea was made knowingly and voluntarily, in holding that the sentencing court properly canvassed the defendant, a finding that this court affirmed, compliance with Practice Book § 39-10 necessarily was determined by the habeas court.[3] Thus, the court properly concluded that the defendant's motion to correct an illegal sentence was barred by the doctrine of collateral estoppel.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] In fact, the habeas court found: "At sentencing on December 11, 1995, the [defendant], through counsel, stated that although he maintain[ed] his innocence, he was proceeding with sentencing based on the strength of the state's case."