# STATE OF CONNECTICUT *v.* WILLIAM CONNELLY
## (AC 14639)

Dupont, C. J., and Landau and Healey, Js.

Argued March 4—officially released August 26, 1997

*William Connelly*, pro se, the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Scott J. Murphy*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, C. J. The defendant was convicted, after a jury trial in January, 1995, of two counts of kidnapping in the second degree in violation of General Statutes § 53a-94,[1] and two counts of assault in the second degree

---

[1] General Statutes § 53a-94 provides: "(a) A person is guilty of kidnapping in the second degree when he abducts another person.

"(b) Kidnapping in the second degree is a class B felony for which three years of the sentence imposed may not be suspended or reduced by the court."

in violation of General Statutes § 53a-60.[2] The defendant appeals from the trial court's judgment, claiming that the trial court improperly (1) charged the jury regarding the distinction between kidnapping and unlawful restraint, (2) dismissed for cause a venireperson in violation of the defendant's right to self-representation, (3) excluded as hearsay an allegedly exculpatory letter written by a material witness, (4) applied an excessive sentence, and (5) violated the defendant's right to effective representation and due process when it required the defendant to disclose his defenses prematurely and failed to charge on the defenses. The defendant also claims (6) that his standby counsel failed to comply with Practice Book § 964, (7) that the state withheld or destroyed potentially exculpatory evidence, and (8) that the statutory definitions of "restrain" and "abduct" are unconstitutionally vague.

The jury could have reasonably found the following facts. On November 10, 1989, the defendant and his brother Brian Connelly resided at their mother's house in the town of Newington. Their mother, at that time, was hospitalized. The defendant's other brothers, Timothy Connelly and Edward Connelly, and sister, Maureen

---

[2] General Statutes § 53a-60 provides: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is a parolee from a correctional institution and with intent to cause physical injury to an employee or member of the Board of Parole, he causes physical injury to such employee or member.

"(b) Assault in the second degree is a class D felony."

Briggs, thought that their mother should be placed in a nursing home. The defendant disagreed.

That morning, Edward and Timothy arrived at their mother's house to clean out a room that Timothy had been using as an office. While they were moving the room's contents, the mail arrived, and Edward brought it in. The defendant accused Edward of taking mail that did not belong to him because the defendant believed that an envelope containing a large check had arrived for Brian. Edward and Timothy were in a bedroom. From the hallway, the defendant argued with them about the mail. He then pulled a gun from his clothing and fired a shot, which struck no one and lodged in the back wall of the bedroom. The defendant entered the bedroom, locked the door, and ordered Edward and Timothy to get down on the floor. He asked Brian, who was in the hallway, to telephone the Federal Bureau of Investigation (FBI). When Brian refused, the defendant tried to place the call himself but instead reached the Newington police department.

Newington police officer Michael Tkac responded to the telephone call. The defendant told Tkac that he was holding Edward and Timothy for mail fraud, and that he would release them only to the FBI. Other officers, including a special weapons and tactics police team, arrived at the house. The defendant demanded that the FBI, Attorney Edward Daly, and a court reporter arrive by 1 p.m. or else he would shoot Edward. At 12:50 p.m., the FBI had not arrived, and the defendant shot Edward in the wrist, breaking a bone. The defendant set another deadline of 3 p.m., threatening to shoot Timothy if the persons he requested had not arrived. The defendant asked for certain documents from his briefcase, which were passed under the door to him. At approximately 2:50 p.m., the defendant shot Timothy in the hand, injuring bones and ligaments.

Prior to the trial that is the subject of this appeal, on April 20, 1990, in a trial to the court, *Dunn, J.,* the defendant was found not guilty by reason of insanity of the same two counts of kidnapping in the second degree and two counts of assault in the second degree arising out of the same incident. He was then committed to the custody of the commissioner of mental health; see General Statutes §§ 53a-13, 17a-580 through 17a-603; for a period of ten years, subject to periodic reviews by the psychiatric security review board. The defendant did not appeal from either his acquittal or his commitment to the custody of the commissioner of mental health.[3]

In January, 1994, the defendant petitioned for a writ of habeas corpus seeking (1) a vacation of the judgment of not guilty by reason of insanity and a remand of his case to the trial court for further proceedings, (2) a release from the "custody of the department of mental health" to the "custody of the department of correction," and (3) such other and further equitable relief "as law and justice may require."[4] The defendant claimed in his habeas petition that his confinement was illegal because, among other things, he was deprived of the effective assistance of counsel in that a "not guilty by reason of insanity" defense was pursued without his knowing and voluntary consent, no plea negotiations occurred before pursuing the defense, he was not informed of his right to a trial without the use of an insanity defense, and he was not canvassed regarding the waiver of his right to a jury trial.[5] The record in

[3] A person committed to the custody of the commissioner of mental health, after a trial in which a verdict of not guilty by reason of mental disease or defect has been entered, may appeal from the commitment order. General Statutes § 17a-597; *State* v. *Warren,* 169 Conn. 207, 363 A.2d 91 (1975).

[4] General Statutes § 52-470 (a) provides that a habeas corpus court may dispose of cases "as law and justice require."

[5] General Statutes § 54-82b (b) provides: "In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto

the habeas proceeding reveals that his then attorney cautioned him that if he prevailed on his habeas petition, he would be exposed to incarceration by the commissioner of correction. The habeas court, *Higgins, J.,* on August 16, 1994, pursuant to General Statutes § 52-493,[6] ordered that the defendant's judgment of acquittal by reason of insanity be vacated and issued a writ of habeas corpus. The court further ordered that if the state's attorney did not elect to proceed "anew" with criminal charges within forty days, the defendant would be released from custody. In affording the defendant relief, the habeas court relied on the defendant's claim that his constitutional right to a trial by jury was violated because he had not waived his right to a jury trial on the record.[7]

shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial."

Practice Book § 839 provides: "The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time the defendant is put to plea, he or she elects a trial by the court, the judicial authority shall advise the defendant of his or her right to a trial by jury and that a failure to elect a jury trial at that time may constitute a waiver of that right. If the defendant does not then elect a jury trial, the defendant's right thereto may be deemed to have been waived."

[6] General Statutes § 52-493 provides: "Order in the nature of prerogative writs. Any court having cognizance of writs of habeas corpus, mandamus, quo warranto, prohibition or ne exeat may, in any action pending before it, make any order, interlocutory or final, in the nature of any such writ, to the extent of its jurisdiction, so far as it may appear to be an appropriate form of relief."

[7] The habeas court did not discuss the ineffective assistance of counsel claim, which was the basis for the habeas petition as well as the umbrella for the assertion that the defendant had not waived his right to a jury trial. The court did, however, in its memorandum of decision, cite to transcripts that clearly noted that as of March 26, 1990, the defendant had not waived his right to a jury trial on the record, and that on April 20, 1990, with no intervening court proceedings, the following discussion took place:

"[State's Attorney]: [The defendant] has elected a court trial, and I think that was done on a prior occasion.

"[Defense Counsel]: Yes, it was. That's a fact, Your Honor."

In January, 1995, the defendant was retried on the same charges of two counts of kidnapping in the second degree and two counts of assault in the second degree, of which a court previously had found him not guilty by reason of insanity. This appeal concerns the defendant's retrial.

I

In view of this background, our first area of inquiry is whether the habeas court properly entertained a habeas petition that did not follow a criminal conviction but, rather, followed an acquittal of criminal charges by reason of insanity, and whether the habeas court had the power to afford the defendant the relief of a new trial, and, if so, whether the defendant, by seeking such relief, had waived his constitutional right to be free of double jeopardy. Neither the state nor the defendant raises any issue in this appeal as to these questions.[8]

A

During the course of the habeas corpus proceeding, the state moved to dismiss the petition for lack of subject matter jurisdiction, claiming that the defendant was not held pursuant to a mittimus following a criminal conviction, criminal jurisdiction having been relinquished. The habeas court, relying on *Miller* v. *Angliker*, 4 Conn. App. 406, 494 A.2d 1126, cert. denied, 197 Conn. 809, 499 A.2d 59 (1985), denied the motion.

In *Miller*, the petitioner appealed from a habeas court's denial of a petition for a writ of habeas corpus, in which the petitioner claimed that he had received ineffective assistance of counsel and that the state had

---

[8] We did not seek supplemental briefs on this issue because the same parties previously had raised and briefed the issue at the habeas corpus proceeding, and the state did not appeal from the granting of the writ and the relief obtained, namely, a new trial. The entire habeas court file was available to us. See also *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 130–31, 629 A.2d 413 (1993).

withheld exculpatory material from him. Id., 414. The petitioner claimed that he was not told of his right to appeal from a finding of not guilty by reason of insanity. Before reaching the merits of the allegations of the petition, the court, in a footnote, discussed whether the petitioner could have maintained a direct appeal from such a finding. Id., 415–16 n.3. The court did so in order to determine if the petitioner had bypassed his right to a direct appeal pursuant to the deliberate bypass rule as articulated in *Fay* v. *Noia*, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).[9] *Miller* v. *Angliker*, supra, 4 Conn. App. 415–16 n.3.

The court in *Miller* did not decide whether the petitioner could have directly appealed from his judgment of acquittal by reason of insanity but, instead, concluded that he was sufficiently "aggrieved" by his commitment to the commissioner of mental health so as to make his habeas petition viable. Id. The court reasoned that the petitioner was aggrieved because he would not have been confined to a mental institution if he had been tried by a jury and the jury had found him not guilty. Id. Although the court did not decide whether the defendant had a direct appeal from the finding of not guilty by reason of insanity, there is some authority, although scant, for a direct appeal from an acquittal by reason of insanity. *State* v. *Marzbanian*, 2 Conn. Cir. Ct. 312, 198 A.2d 721 (1963); see *Jacobs* v. *Carmel*, 869 P.2d 207 (Colo. 1994).

The petitioner in *Miller* subsequently filed a petition for a writ of habeas corpus in the federal District Court,

---

[9] When *Miller* was decided, the "cause and prejudice" standard of *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), was not yet the standard by which to analyze a petitioner's failure to pursue a constitutional claim on direct appeal. See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 629 A.2d 413 (1993). At the time of the habeas corpus petition in the present case, the cause and prejudice standard applied. Id.

pursuing his claim of ineffective assistance of counsel and the withholding of exculpatory material from him. The Second Circuit Court of Appeals in *Miller* v. *Angliker*, 848 F.2d 1312, 1319–24 (2d Cir. 1988), reversed the District Court's denial of the petition and held that the petition should have been granted on the basis of the petitioner's claim that *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), required that the state provide him with any exculpatory material in its possession. The court held that *Brady* applied to proceedings in which a defendant has pleaded not guilty by reason of insanity. *Miller* v. *Angliker*, supra, 1322. The court did not, however, discuss whether the petitioner had deliberately bypassed a direct appeal (the deliberate bypass rule) or whether he had established both a cause for his failure to raise a constitutional issue previously and a showing that he was prejudiced by the alleged constitutional violation (the cause and prejudice standard).

Although the Second Circuit did not discuss whether the petitioner could have appealed from the finding of not guilty by reason of insanity, its discussion of whether the principles of *Brady* apply to that situation is useful in analyzing whether a defendant has a right to a direct appeal from such a finding.

"A plea of not guilty by reason of insanity resembles the plea of guilty in several significant respects, as it waives important trial rights belonging to the defendant, including his right to argue that he did not perform the acts with which he is charged, his right to urge through cross-examination of the State's witnesses that his confessions were not voluntary, and his right to introduce any other evidence tending to create a doubt that he actually performed the acts charged. . . . [I]t is plain that the insanity plea is more like a plea of guilty than it is like a plea of not guilty since, while not relieving the State of all burden to prove that the defendant

performed the acts charged, the insanity plea lessens that burden considerably as a practical matter by barring the defendant from contesting or impeaching the State's proof and from presenting other evidence that could counter that proof." *Miller* v. *Angliker,* supra, 848 F.2d 1319–20.

There is obviously no need for an appeal from a judgment following a verdict of not guilty. We recognize, however, that the consequences of a finding of not guilty by reason of insanity are not the same as an unqualified verdict of not guilty. In the latter situation, the defendant is free of all state supervision, while, in the former, the defendant is committed to the commissioner of mental health, with the possibility of confinement to a state mental institution for a long period of time. Thus, a verdict of not guilty by reason of insanity is a "hybrid" verdict, but it more closely resembles a plea of guilty because the defendant has admitted his commission of the crime. Id., 1312.

We conclude that the defendant in this case had a right by way of direct appeal, after a finding of not guilty by reason of mental disease or defect, to complain of the lack of a waiver of a jury trial. We must next determine whether his claims were properly before the habeas court under the cause and prejudice standard of *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

Here, the good cause for the failure to take a direct appeal is the uncertainty of the defendant's right to a direct appeal at the time his first trial concluded. No court at that time had decided that a right of appeal existed from a finding of not guilty by reason of insanity. We next must determine whether actual prejudice existed. Actual prejudice cannot be viewed from the hindsight of the defendant's second trial with a jury, in which he pleaded not guilty and was found guilty, but must be viewed from the perspective of the facts known

to the habeas court. At that point, the prejudice in terms of whether a different result would have been obtained had there been a jury trial existed because the defendant might have been free of all confinement, after a jury trial, rather than confined to the custody of the commissioner of mental health.

In this case, the defendant, in his habeas petition, claimed that he was denied the effective assistance of counsel and that the trial court did not canvass him with respect to his use of the insanity defense and his right to a trial by jury. "[W]hen the claim of inadequate counsel is joined with other substantive and procedural claims of error, it is often difficult to make a judgment about the extent to which inadequate counsel has implicated the outcome of the criminal [judgment]." (Internal quotation marks omitted.) *State* v. *Patrick*, 42 Conn. App. 640, 651, 681 A.2d 380 (1996). We conclude that the defendant's claim of ineffective assistance of counsel, which embraced his claim of a lack of waiver of a jury trial, was sufficient to allow the habeas court to review the merits of his habeas corpus petition.

A habeas court, pursuant to General Statutes § 52-470 (a), "shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require." "The statutory language 'dispose of the case as law and justice require' gives the habeas court the power to conform a remedy to the particular facts." *State* v. *Phidd*, 42 Conn. App. 17, 28, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997). Habeas courts often order new trials in cases where petitioners have been convicted in trials tainted by ineffective assistance of counsel. See, e.g., *Copas* v. *Commissioner of Correc-*

*tion*, 234 Conn. 139, 662 A.2d 718 (1995); see also *Laws* v. *Warden*, 218 Conn. 479, 590 A.2d 436 (1991).

The Second Circuit's rescript in *Miller* v. *Angliker*, supra, 848 F.2d 1324, provided for a remand to the District Court, with direction that the "judgment should provide that the writ will be granted unless within a reasonable time the State brings Miller to trial."

In the present case, the habeas court concluded that the record did not support a knowing and voluntary waiver by the defendant of his right to a trial by jury. The habeas court, therefore, granted the petition, vacated the insanity acquittal, and authorized the state to retry the defendant, as was done in *Miller*.

A habeas court has broad discretion to fashion a remedy. General Statutes § 52-470. We conclude that there was no bar preventing the habeas court from entertaining the defendant's petition or from ordering the type of relief it ordered in the present case, namely a remand to the trial court.

B

Because the habeas court could properly determine whether the writ of habeas corpus should issue and could also properly order a new trial, the trial court could properly try the defendant a second time. Any prohibition against double jeopardy does not implicate a trial court's subject matter jurisdiction. See *State* v. *Booker*, 28 Conn. App. 34, 39–40, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992), cert. denied, 507 U.S. 916, 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993). The trial court had personal jurisdiction because the defendant initiated the habeas proceeding that resulted in the defendant's second trial. He cannot claim any deprivation of his right to be free of double jeopardy. "[I]mmunity from double jeopardy is a personal right," which can be waived. *State* v. *Price*, 208 Conn. 387,

390, 544 A.2d 184 (1988). The defense of double jeopardy may be forfeited by a failure to assert it in a timely fashion. *State* v. *Ledbetter*, 240 Conn. 317, 325–26, 692 A.2d 713 (1997). The defendant not only failed to assert it, he forfeited his right to be free of double jeopardy.

## II

We now address the defendant's claims arising from his retrial.

## A

The defendant first argues that the trial court, *Scheinblum, J.*, improperly instructed the jury regarding the difference between kidnapping and the lesser included offense of unlawful restraint[10] because it did not give the charge that the defendant requested. The defendant asked that the court quote language from *State* v. *Vass*, 191 Conn. 604, 617, 469 A.2d 767 (1983), that differentiated between the two crimes.[11] The defendant contends that because he took certain precautions to avert harm, his actions fit within the definition of unlawful restraint but not kidnapping.

It is well established that, "[i]f a requested charge is in substance given, the court's failure to give a charge

---

[10] Unlawful restraint in the first degree is defined in General Statutes § 53a-95 as follows: "(a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class D felony."

Unlawful restraint in the second degree is defined in General Statutes § 53a-96 as follows: "(a) A person is guilty of unlawful restraint in the second degree when he restrains another person.

"(b) Unlawful restraint in the second degree is a class A misdemeanor."

[11] The requested language, as excerpted from *State* v. *Vass*, supra, 191 Conn. 617, is: "The gravamen of unlawful restraint in the first degree is restraint of another person 'under circumstances which expose the latter to a substantial risk of injury.' The gravamen of kidnapping is, however, abduction, without regard to risk of injury."

in exact conformance with the words of the request will not constitute a ground for reversal." *State* v. *Ortiz*, 217 Conn. 648, 662, 588 A.2d 127 (1991). The court charged the jury on the elements of the crime of kidnapping as set forth in General Statutes §§ 53a-94 and 53a-91 (2) (b). The court further charged that if the jury did not find the defendant guilty of kidnapping, it should then consider whether he was guilty of the elements of unlawful restraint in the first degree or unlawful restraint in the second degree. The court outlined the statutory elements of those crimes.

The defendant's reliance on *Vass* is misplaced. In *Vass*, no jury instruction had been given to consider the offense of unlawful restraint. The language that the defendant quotes is from the court's discussion of whether the defendant in *Vass*, charged with kidnapping in the second degree, was entitled to an instruction on the lesser included offense of unlawful restraint, under the test set forth in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). The court discussed the second prong of *Whistnant*, which inquires whether " 'it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser' . . . ." *State* v. *Vass*, supra, 191 Conn. 617. The court differentiated between the two crimes in order to demonstrate that it was possible to commit kidnapping in the second degree without first committing unlawful restraint in the first degree, and, that, in the circumstances present in *Vass*, an instruction on unlawful restraint in the first degree was not warranted. A charge on unlawful restraint in the second degree was also unwarranted because the proof of one element of kidnapping in the second degree was not sufficiently in dispute.

In the present case, there was sufficient evidence to charge on both offenses, and it was up to the jury to

determine which, if either, the defendant had committed. Thus, the court's instructions to the jury were proper, and the jury was able to consider the differing elements of the crimes of kidnapping and unlawful restraint before returning with a guilty verdict on the kidnapping charges.

## B

The defendant next contends that the trial court improperly dismissed a prospective juror for cause. A sidebar conference regarding the prospective juror had been held, which the defendant's standby counsel attended but which the defendant did not attend. The defendant claims that his absence violated his right to effective self-representation.

" 'The trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion.' *State* v. *Cubano*, 203 Conn. 81, 88–89, 523 A.2d 495 (1987); *State* v. *Anthony*, 172 Conn. 172, 175, 374 A.2d 156 (1976). On appeal, the defendant bears the burden of showing that the rulings of the trial court resulted in a jury that could not judge his guilt impartially. *State* v. *Marra*, 195 Conn. 421, 432, 489 A.2d 350 (1985)." *State* v. *Tucker*, 226 Conn. 618, 630–31, 629 A.2d 1067 (1993).

The defendant claims that his standby counsel interfered with his right to self-representation because the standby counsel took part in the sidebar conference without him and without consulting with him. The facts indicate, however, that, even if this act did interfere with the defendant's right to self-representation, the interference was harmless.

The venireperson in question, an attorney, had stated that, if she were placed on this jury, she would be working at night to make up the work she missed during

the day. The court excused the prospective juror for cause after a sidebar conference. The defendant then indicated to his standby counsel that he objected to this dismissal for cause and would have objected if he had attended the sidebar conference. The court then stated for the record that "the court would have excused [her] for cause anyway because the person indicated that she'd be so consumed with her responsibilities at [work] that she probably would be unable to devote her full attention to the case. And, in addition, she indicated that if she were chosen as a juror, she'd be going to work at night, so she could play catch-up. And I don't think I wanted a person on the jury that might be nodding off during the course of the day. You may have an exception to the court's ruling."

It is clear that the court had a valid reason for dismissing the prospective juror and that, with or without the defendant's acquiescence in the dismissal, the court would have excused the juror.

## C

The defendant's third claim is that the trial court improperly refused to admit a letter written to the defendant by his brother Brian. At the time of trial, Brian lived out-of-state and did not testify, although the defendant had subpoenaed him. When the defendant took the stand, he attempted to admit the letter as a full exhibit for the purpose of negating his specific intent by showing that the shooting was not premeditated. The state objected on hearsay grounds. The court observed that the defendant himself was the best source of evidence of specific intent, and he was already on the stand, and, further, that the evidence would be cumulative.

" 'A statement made out-of-court that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible.' " *State* v.

*Bova,* 240 Conn. 210, 237, 690 A.2d 1370 (1997). The letter was written out-of-court. The defendant's proffer of the letter indicated that it was offered to show the truth of its contents. None of the named exceptions to the hearsay rule apply.

The defendant sought to admit the letter under the residual exception to the hearsay rule. " 'The residual, or catchall, exception to the hearsay rule allows a trial court to admit hearsay evidence not admissible under any of the established exceptions if: (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions.' " *State* v. *Reddick,* 36 Conn. App. 774, 789, 654 A.2d 761, cert. denied, 232 Conn. 922, 656 A.2d 671 (1995). The defendant claims there was a reasonable necessity of admitting the letter because it would have supported his defenses of entrapment, necessity and duress. We find nothing in the letter that supports those defenses. The defendant also claims that the letter would have enhanced his own credibility while diminishing the credibility of the victims.

" 'It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him.' " *State* v. *Marshall,* 45 Conn. App. 66, 78, 694 A.2d 816, cert. granted on other grounds, 241 Conn. 925, 697 A.2d 361 (1997). The ruling was not erroneous, and, even if it were, the defendant has not demonstrated that the exclusion of this evidence was harmful to him.

### D

The defendant next claims that his sentence of imprisonment of forty years was excessive. He bases this claim on allegations that the presentence investigation

(PSI) was unreliable and that the trial court's bias denied him the presumption of sanity.

1

Before sentencing, the defendant attempted to waive his right to a PSI. The court, however, ordered one. At sentencing, both the state and the defendant's probation officer recommended a sentence of imprisonment of fifty years. The defendant moved to suppress the PSI on the ground that it was based on inaccuracies and hearsay. The trial court denied the motion, and asked the defendant to point out the inaccuracies.[12] The trial court stated that it preferred to see the defendant receive psychiatric help, but, because the defendant consistently refused such help, the court had no choice but to incarcerate him.

The court also read into the record a letter written by the defendant's aunt that asked for leniency in sentencing. The letter indicated that she thought the defendant's actions resulted from his military experiences while serving in Vietnam. The defendant objected to the letter, stating he had not had an opportunity to inspect it.

"It is well established that when the sentence imposed is within the limits fixed by statute for the offenses charged, an appellate claim that the sentence is excessive is nothing more than an appeal for clemency and a request that this court exercise discretionary authority it does not possess. *State* v. *Nardini*, 187

---

[12] Among the inaccuracies that the defendant pointed out were the following: (1) The PSI stated that the defendant was expecting a piece of mail that day. The defendant responded that the issue of the dispute was much broader than that. (2) The PSI stated that all of his family members feared him. The defendant pointed to evidence that his exwife was not afraid of him. (3) The defendant characterized comments in the PSI as "overreaching," and observations about his paranoia as "exaggeration." The defendant also presented witnesses who stated that, while incarcerated, the defendant was cooperative and not perceived as a danger.

Conn. 109, 127, 445 A.2d 304 (1982). In *State* v. *Rose*, 168 Conn. 623, 638, 362 A.2d 813 (1975), we stated that we have no discretionary power to modify or overturn a sentence that was within the limits fixed by statute for the offense charged, except where a trial court appears to have abused its discretion. See also *State* v. *LaPorta*, 140 Conn. 610, 612, 102 A.2d 885 (1954); *State* v. *Van Allen*, 140 Conn. 39, 44, 97 A.2d 890 (1953); *State* v. *Horton*, 132 Conn. 276, 278, 43 A.2d 744 (1945); *State* v. *Chuchelow*, 128 Conn. 323, 324, 22 A.2d 780 (1941). Abuse of discretion, however, means more than that the defendant's sentence was too severe. See *State* v. *Horton*, supra [278], and cases cited therein. Where the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion. *State* v. *LaPorta*, supra [612]. A petition for sentence review . . . is the appropriate vehicle by which to have this claim evaluated. See General Statutes § 51-195 et seq."[13] *State* v. *Baldwin*, 224 Conn. 347, 370–71, 618 A.2d 513 (1993).

---

[13] General Statutes § 51-195 provides: "Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice. The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a

"We have . . . stated that if a sentence is within statutory limits it is not generally subject to modification by a reviewing court. . . . A sentencing judge has very broad discretion in imposing any sentence within the statutory limits . . . . The court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . Due process requires, however, that information be considered only if it has some minimal indicium of reliability. . . . A court should refrain from comments that find no basis in the record. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence." (Citations omitted; internal quotation marks omitted.) *State* v. *Collette*, 199 Conn. 308, 320–21, 507 A.2d 99 (1986).

The trial court properly considered the PSI when determining the defendant's sentence. That the PSI may have contained some inaccuracies was cured by the defendant's denials and clarifications of the facts included.[14] The trial court did not improperly admit the letter from the defendant's aunt. The defendant has not shown that the material contained in the letter was false or unreliable, nor has the defendant shown that the trial court substantially relied on it in determining his sentence. Even if the trial court did rely on it, the letter asked for leniency in sentencing, and, thus, did not harm the defendant.

statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."

[14] The trial court pointed out that one reason the PSI contained inaccurate information is that the defendant refused to cooperate with the investigator.

2

The defendant also claims that the trial court was biased and its bias denied him the presumption of sanity. There is little support for this claim in the record. The trial court had instructed the jury on the presumption of sanity. The court gave a curative instruction when the defendant himself referred to his commitment at the Whiting Forensic Institute. Further, the trial court, on several occasions, complimented the defendant's thoroughness and noted his competency. While the trial court did state that it thought the defendant would benefit from psychiatric help, it did not sentence the defendant to receive any sort of psychiatric help. Our thorough review of the record does not reveal any bias of the court. See *State* v. *Webb*, 238 Conn. 389, 462, 680 A.2d 147 (1996).

E

The defendant next claims that the trial court denied him his rights of effective assistance of counsel and due process when it required the defendant to disclose his defenses prematurely, failed to charge on the defenses, and barred the defendant from arguing his defenses.

The trial court had asked the defendant to disclose his defenses during jury selection. The defendant stated that his defenses were necessity, entrapment and duress. The trial court recognized that because the defenses were not affirmative defenses, it was unnecessary for the defendant to disclose them before trial and apologized for asking him to disclose them.

Any error in the trial court's question was harmless. Simply stating that those were the defendant's defenses did not give the state any advantage because the state still needed to discover what evidence the defendant

would introduce in support of the defenses. The state could not oppose the defenses until the defendant introduced enough evidence to support them. The defendant contends that sufficient evidence was adduced at trial to require a jury instruction on the defenses of entrapment and duress. We do not agree.

The trial court found that the defendant failed to introduce any evidence in support of his three defenses. The defendant challenges that ruling only as to the defenses of entrapment and duress. " '[W]hen there is evidence indicating the availability of a recognized defense, a defendant is entitled as a matter of law to a theory of defense instruction.' " *State* v. *Webley*, 17 Conn. App. 200, 204, 551 A.2d 428 (1988); see *State* v. *Belle*, 215 Conn. 257, 273, 576 A.2d 139 (1990). However, "[t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." *State* v. *Diggs*, 219 Conn. 295, 299, 592 A.2d 949 (1991); see *State* v. *Williams*, 202 Conn. 349, 364, 521 A.2d 150 (1987). In reviewing the defendant's claim that he was entitled to instructions on entrapment and duress, we look at the evidence in a light most favorable to his claim. *State* v. *Fuller*, 199 Conn. 273, 279, 506 A.2d 556 (1986); *State* v. *Webley*, supra, 204.

To prove duress as a defense, the defendant had the burden of demonstrating that he "engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. The defense of duress as defined in this section shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress." General Statutes § 53a-14. The defendant

produced no evidence purporting to show that anyone used or threatened to use physical force upon him or upon a third person. His only claim of alleged force is that his brothers were removing items from their mother's house against the defendant's will, and, thus, would have had to use force to remove any items in his presence. Had the defendant tried physically to stop his brothers from moving items out of the house and thus subjected himself to force, this would have brought him within the second sentence of the statute by "intentionally or recklessly [placing] himself in a situation in which it is probable that he [would] be subjected to duress." The defendant did not produce any evidence, however, that would make the defense of duress applicable, and the trial court properly refused to allow the defendant to address it in his closing argument and properly refused to instruct the jury on it.

"In order for a defendant to defend successfully on a theory of entrapment [pursuant to General Statutes § 53a-15],[15] it must be shown that the government induced the defendant to commit a criminal act that he would not otherwise have committed, and that the government acted with the purpose of initiating a criminal prosecution against the defendant." *State* v. *Jurgensen*, 42 Conn. App. 751, 757, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996). The defendant provided no evidence that any governmental figure in any way induced him to lock up and shoot his brothers. The trial court properly refused to give an instruction on entrapment and properly refused to allow the defendant to argue its applicability.

---

[15] General Statutes § 53a-15 provides: "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant, or by a person acting in cooperation with a public servant, for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct."

F

The defendant next claims that his standby counsel violated Practice Book § 964.[16] The defendant states that his standby counsel improperly (1) withheld documents from him, (2) refused the defendant full access to a jury instruction book, (3) initially refused to subpoena witnesses, (4) stated he was not obligated to advise but was waiting to take over the case, (5) participated in the dismissal of a venireperson over the defendant's objection, and (6) stated that the defendant had to submit to a psychiatric exam.

The defendant claims review of this claim is warranted under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or plain error review. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id.

The defendant's claim fails the second prong of *Golding*, that the claim is of constitutional magnitude. Although the defendant suggests that his standby counsel's alleged misdeeds violated his right to a fair trial and effective representation under the sixth amendment to

---

[16] Practice Book § 964 provides: "If requested to do so by the defendant, the standby counsel shall advise the defendant as to legal procedural matters. If there is no objection by the defendant, such counsel may also call the judicial authority's attention to matters favorable to the defendant. Such counsel shall not interfere with the defendant's presentation of the case and may give advice only upon request."

the United States constitution[17] and article first, § 8, of the constitution of Connecticut,[18] he has not so shown. The defendant clearly waived his right to counsel under the sixth amendment when he chose to proceed pro se.

The defendant also claims that his standby counsel's actions deprived him of rights he holds under *Faretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). "[T]he pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions . . . or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded." *McKaskle* v. *Wiggins*, 465 U.S. 168, 178, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). None of the standby counsel's alleged actions or failure to take action were so grievous as to deprive the defendant of constitutional *Faretta* rights.

[17] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[18] Article first, § 8, of the constitution of Connecticut provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

"We next consider whether this issue is entitled to plain error review. Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Caprilozzi*, 45 Conn. App. 455, 462, 696 A.2d 380 (1997).

Plain error review is unwarranted here. Most of the defendant's initial difficulties with his standby counsel's work were resolved during the trial. None of the alleged action or lack of action undermined the defendant's right to a fair trial. Further, although the defendant later changed his mind, he did request after trial that the standby counsel be elevated to full counsel.

G

The defendant next claims that the state withheld, destroyed or failed to preserve exculpatory evidence. Specifically, the defendant claims that certain requests in his motion for discovery and production were improperly denied. He had requested a report from the police questioning his brother Brian during the time that the defendant was holding the other two brothers in the bedroom. The police claim that no such document was ever made. The defendant also requested certain

documents that he had asked a police officer to pass under the bedroom door to him while he was locked in there. The evidence officer stated that those documents were missing.

"The United States Supreme Court has held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [government].' *Brady* v. *Maryland*, [supra, 373 U.S. 87]; *State* v. *Walker*, 214 Conn. 122, 126, 571 A.2d 686 (1990); *State* v. *Cohane*, 193 Conn. 474, 495, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); see *State* v. *Milner*, 206 Conn. 512, 539–40, 539 A.2d 80 (1988). This type of violation of the defendant's due process rights is commonly referred to as a '*Brady* violation.' " *State* v. *Morales*, 232 Conn. 707, 714, 657 A.2d 585 (1995). To prevail on a *Brady* claim, the defendant must establish "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore* v. *Illinois*, 408 U.S. 786, 794–95, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972). "Suppressed evidence is material if it creates a reasonable doubt [of guilt] that did not otherwise exist . . . . The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." (Citations omitted; internal quotation marks omitted.) *State* v. *Daugaard*, 231 Conn. 195, 205–206, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995).

The defendant's claim fails because he has not proven that the allegedly suppressed evidence is material or favorable to him. There is no evidence that a report of the interview with Brian ever existed. Nor is it apparent what portion of the interview would be exculpatory. In

regards to his own documents that the police cannot locate, the defendant could have testified to their contents when he was on the witness stand. The defendant has never stated how these documents would have created a reasonable doubt of his guilt, nor has he shown bad faith on the part of the police in failing to preserve them. For these reasons, his claim must fail.

## H

The defendant's final claim is that the statutory definitions of "restrain" and "abduct" are unconstitutionally vague. Section 53a-91 (1) defines restrain as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ." " 'Abduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2). The defendant argues that these are not the average, everyday meanings of the two words, and, therefore, a reasonable person would not know what act is proscribed. We disagree. The definitions are clear and the proscribed acts equally clear. Further, it is not the place of the courts to redefine terms that the legislature has already adequately defined.

The judgment is affirmed.

In this opinion the other judges concurred.