[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Randy Kirsch, has moved this Court seeking correction of his sentence pursuant to Practice Book § 43-22[1] on the basis that it was illegally imposed, a new sentencing hearing and the disqualification of this Court in any subsequent proceedings. The defendant alleges that his sentence was imposed in violation of the fifth, sixth and fourteenth amendments to the United States CT Page 11718 constitution, and article first, §§ 7 and 8, of the constitution of Connecticut. Specifically, the defendant contends that a postcard written by a member of the public and read into the record by the Court during the defendant's sentencing hearing was an ex parte communication to the Court and influenced, or appeared to influence, the Court's sentence and its decision regarding the amount of the appeal bond. For the following reasons, the defendant's motion to correct illegal sentence, to vacate the sentence, for a new sentencing hearing, and to disqualify the Court is denied.
 I. PROCEDURAL BACKGROUND
After conviction by a jury on June 15, 2000 of one count of manslaughter first degree, one count of manslaughter second degree with a motor vehicle while intoxicated and one count of operating a motor vehicle while intoxicated, this Court sentenced the defendant, on August 11, 2000, to a total effective sentence of fifteen years of incarceration, suspended after ten years, five years of probation, and a fine of $21,000.00. During the sentencing hearing, the Court read a portion of a postcard received by the Court from a member of the public in which the author requested that the Court impose the maximum sentence because of the defendant's apparent lack of remorse, his lack of acceptance of responsibility for his actions, and because of the danger that the defendant and others who drink and drive pose to our highways[2]. The defendant objected to the Court considering the postcard and labeled it an impermissible ex parte communication. The postcard was made a part of the record of the hearing.
On August 14, 2000, the defendant filed a motion entitled "MOTION TO CORRECT ILLEGAL SENTENCE, TO VACATE THE SENTENCE, FOR A NEW SENTENCING HEARING, AND TO DISQUALIFY THE COURT," alleging that the postcard was an ex parte communication to the Court in violation of Canon 3(4) of the Code of Judicial Conduct, not previously disclosed to defense counsel, that it influenced or appeared to influence the Court's sentence and decision on bail[3], and that it violated his right to due process of law and should not have been considered in imposing the sentence. The defendant also moves that this Court disqualify itself from any further proceedings associated with his case and seeks a new sentencing hearing presided over by a different judge.
 II. DISCUSSION
"Practice Book [§ 43-22] provides that the judicial authority may correct an illegal sentence at any time. The illegality of the sentence is a necessary prerequisite to the court's correction of that sentence pursuant to [§ 43-22]." State v. Gaskin, 7 Conn. App. 131, 133, CT Page 11719508 A.2d 40 (1986). "An `illegal sentence' is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory." State v. McNellis, 15 Conn. App. 416, 443-44, 546 A.2d 292
(1988), cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). In the present case, the defendant does not claim that any of these violations occurred during his sentencing hearing. Therefore, the sentence imposed on the defendant was legal within the meaning of Practice Book § 43-22.
The defendant seems to argue, rather, that the sentence was imposed in an illegal manner. "Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's rights . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises." (Internal quotation marks omitted.) Id. at 444. The defendant specifically argues that the Court violated Canon 3(4) of the Code of Judicial Conduct by considering the ex parte communication when imposing its sentence.
Canon 3(4) of the Code of Judicial Conduct states in pertinent part that "[a] judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding. . . ." Code of Judicial Conduct 3(4). An exception to this general rule is that "[a] judge may initiate or consider any ex parte communications when expressly authorized by law to do so." Code of Judicial Conduct 3(4)(E) In the present case, the Court was authorized by law to consider the communication that was initiated by a member of the public and read by the Court during the defendant's sentencing hearing.
"It has long been the practice in this state to permit the sentencing Court to exercise a wide discretion as to the sources and types of information used to assist it in determining the sentence to be imposed within the limits fixed by law. . . . Such practice facilitates the penal philosophy that sentences ought to be individualized to fit not only the crime but also the criminal." (Citation omitted.) State v. McNellis,supra, 15 Conn. App. 445. "It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." (Internal quotation marks omitted.) State v. Huey, 199 Conn. 121, 127, 505 A.2d 1242 (1986). "Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural CT Page 11720 standard as evidence introduced at trial. Rather, judges may consider a wide variety of information." (Internal quotation marks omitted.). Id;State v. Patterson, 236 Conn. 561, 570, 674 A.2d 416 (1996). See, Statev. Carter, 48 Conn. App. 492, 496, 710 A.2d 1371 (1998). "Consistent with due process the trial Court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstances." State v. Huey, supra,199 Conn. 127; State v. Patterson, supra, 236 Conn. 570-71; State v.Carter, supra, 48 Conn. App. 496.
"Due process requires, however, that information be considered only if it has some minimal indicium of reliability. . . . A court should refrain from comments that find no basis in the record. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence." (Citations omitted.) State v. Collette, 199 Conn. 308,320-21, 507 A.2d 99 (1986); State v. Connelly, 46 Conn. App. 486, 505,700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 713 A.2d 829 (1998), cert. denied, 244 Conn. 908, 713 A.2d 829 (1998), and cert. denied,525 U.S. 907, 119 S.Ct. 245, 142 L.Ed.2d 201 (1998).
State v. Connelly, supra, is a case very similar to the present. InConnelly, the trial Court during sentencing read into the record a letter written by the defendant's aunt. Id. at 503. The defendant objected to the letter on the ground that he was not given an opportunity to inspect it. The Connelly Court ruled that "[t]he trial Court did not improperly admit the letter from the defendant's aunt. The defendant has not shown that the material contained in the letter was false or unreliable, nor has the defendant shown that the trial Court substantially relied on it in determining his sentence." Id. at 505.
In the present case, the Court received a postcard from a member of the public and read portions of it during the defendant's sentencing hearing. The Court stated that this was done because ". . . those thoughts from a more disassociated person, from the public, reflect the sentiments of many people who travel our streets and our highways." See, State v.Kirsch, Transcript of proceedings dated August 11, 2000, (hereinafter "Transcript"), p. 10. After defense counsel objected to the Court considering the postcard, the Court stated that "those remarks do not add anything that the [C]ourt hasn't thought of, and that . . . it was just a summary of what the [C]ourt has stated." Transcript, p. 13.
It is apparent from the record that the Court did not rely on the information in the postcard in determining the defendant's sentence or CT Page 11721 setting the appeal bond. Rather, the Court used the postcard as anecdotal evidence which summarized the concerns the Court had already expressed in its preceding remarks. Indeed, the author of the postcard asked the Court to sentence the defendant to the maximum penalty allowable under the law, which was thirty years and six months of incarceration. The Court, however, sentenced the defendant to fifteen years of incarceration, execution suspended after ten years. Clearly, there is nothing in the record to support the defendant's conclusion that the postcard influenced the Court in making its sentencing decision.
Moreover, the defendant cannot demonstrate that the information was materially false or unreliable because the postcard contained the author's opinions and not facts. Although the author apparently received his information about the defendant through the media, there is nothing in the postcard that refers to anything specific about the defendant or the facts of the case. The author's comments merely touched upon the defendant's lack of remorse and responsibility, and the danger of drunk drivers on our roads, opinions which this Court shared. The Court, in its sentencing remarks, detailed the defendant's lack of remorse reflected in the pre-sentence investigation report and in his remarks during the sentencing hearing. The Court also expressed its concern over the problem of drunk driving in our society and that the defendant poses a serious risk to public safety. See, Transcript, pages 1, 7-9.
Accordingly, the Court finds that the defendant has failed to establish that the information contained in the postcard was materially false or unreliable, and that the Court substantially relied on the information in determining the defendant's sentence. Therefore, the sentence was not imposed in an illegal manner and the defendant was not denied due process of law.
 III. CONCLUSION
Based upon the foregoing analysis, the defendant's motion to correct the illegal sentence is denied. Because the sentence that the Court imposed was legal and not imposed in an illegal manner, the motion to vacate the sentence, schedule a new sentencing hearing, and disqualify the Court from such hearing is denied.
BY THE COURT,
Espinosa, J.